THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
DENITA HARRIS                               )
                    Plaintiff,              )
                                            )
v.                                          )    Civil Action No. 07-1422 (RCL)
                                            )
DISTRICT OF COLUMBIA                        )
                    Defendant.              )
_____)

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Denita Harris hereby respectfully moves pursuant to Rule 56 of the Federal

Rules of Civil Procedure for summary judgment. In support of her Motion, Ms. Harris submits

the attached Memorandum.

For the reasons stated therein, Ms. Harris respectfully requests that this Court grant her

summary judgment on all claims and issue an order containing the following relief:

1)      a declaration that the District of Columbia Public Schools ("DCPS") violated the

Individuals with Disabilities Education Act ("IDEA") and denied her daughter D.H. Free

Appropriate Public Education by failing to respond to a request for funding of an independent

evaluation; and

2)      an injunction ordering DCPS to fund an independent functional behavioral assessment

("FBA") of D.H., and following receipt of that evaluation to convene a multidisciplinary team

("MDT") meeting to review all of D.H.'s evaluations, to develop an appropriate individualized

education program ("IEP"), and to develop a compensatory education plan to compensate D.H.

for DCPS' failure to fund an independent FBA sooner.

1

Respectfully submitted,

/s/ Douglas Tyrka
Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave. NW, Suite 400
Washington, DC  20009
(ph) (202) 265-4260
(f) (202) 265-4264
tyrka@tyrkalaw.com

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| DENITA HARRIS | ) |
|             Plaintiff, | ) |
|  | ) |
| v. | )     Civil Action No. 07-1422 (RCL) |
|  | ) |
| DISTRICT OF COLUMBIA | ) |
|             Defendant. | ) |

_____)

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

The Plaintiff, Denita Harris, brought this case on behalf of her minor daughter D.H. under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., following an administrative hearing of these same claims. The Hearing Officer denied her any relief and dismissed her case.

Ms. Harris seeks an order from this Court enjoining the District of Columbia Public Schools immediately to fund an independent Functional Behavioral Assessment ("FBA") and to convene a multidisciplinary team ("MDT") meeting to review all of D.H.'s evaluations, develop an appropriate individualized education program ("IEP"), and develop a compensatory education plan to compensate D.H. for DCPS' failure to fund an independent FBA sooner.

### STATUTORY FRAMEWORK

The IDEA, 20 U.S.C. § 1400, et seq., guarantees "that all children with disabilities have available to them free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A); 34 C.F.R. § 300.300.

3

"The primary vehicle for implementing these congressional goals is the [IEP]…Prepared at meetings between a representative of the local school district, the child's teacher, the parents or guardians, and, whenever appropriate, the disabled child, the IEP sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." Honig v. Doe, 484 U.S. 305, 311 (1988).

Students' abilities must be assessed and evaluated before they can be found eligible to receive specialized instruction. See 20 U.S.C. § 1414(b)(4). Therefore, each local educational agency ("LEA") must ensure that "[t]he child is assessed in all areas of suspected disability," "including, if appropriate, health, vision, hearing, social and emotional status, general intelligence, academic performance, communicative status, and motor abilities." 20 U.S.C. § 1414(b)(3)(B); 34 C.F.R. § 300.304(c)(4). The LEA must then base the child's IEP on the most recent evaluations. 20 U.S.C. § 1414(d)(3)(A)(iii).

If a parent disagrees with an evaluation obtained by the public agency, the parent has a right to an independent educational evaluation at public expense. 34 C.F.R. § 300.502(b)(1). "If a parent requests an independent educational evaluation at public expense, the public agency must, without unnecessary delay, either…[f]ile a due process complaint to request a hearing to show that its evaluation is appropriate; or…[e]nsure that an independent educational evaluation is provided at public expense." 34 C.F.R. § 300.502(b)(2).

Congress has also afforded parents several procedural safeguards, including the right to an administrative "due process hearing." See 20 U.S.C. § 1415. "Any party aggrieved by the findings and decision" at a due process hearing has the right "to bring a civil action with respect

to the complaint presented...in a district court of the United States without regard to the amount in controversy." 20 U.S.C. § 1415(i)(2)(A).

## SUMMARY JUDGMENT STANDARD

In general, summary judgment is appropriate when the record as a whole shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

When considering a motion for summary judgment, a trial court must draw all justifiable inferences in the non-moving party's favor, but the non-moving party may not rely on mere conclusory allegations, and "must present significant probative evidence tending to support" its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In a summary judgment motion, "the burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Unlike in typical judicial review of administrative action, in suits filed under the IDEA following an administrative hearing the court bases its decision on the preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(B)(iii). "The district court's standard of review under the IDEA is less deferential than that applied under the traditional substantial evidence test used in ordinary administrative review cases." Scorah v. District of Columbia, 322 F. Supp. 12, 16 (D.D.C. 2004) (citing Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988) and Kroot v. D.C., 800 F. Supp. 976, 981 (D.C.C. 1992)). The Plaintiff must persuade the court that the hearing officer was wrong, and the court must explain its basis for ruling against the hearing officer, ( see Kerkam, 862 F.2d at 887) although "a decision without reasoned and specific conclusions deserves little

5

deference." Petway v. Dist. of Columbia, 2005 U.S. Dist. LEXIS 36226 at 22-23 (D.D.C. 2005);

citing Reid v. District of Columbia, 401 F.3d 516, 521 (D.C. Cir. 2005) and Lyons v. Smith, 829

F. Supp. 414, 418 (D.D.C. 1993).

Regardless of the weight given to hearing officers' decisions in most IDEA cases, issues

of statutory construction are pure questions of law that courts review de novo; the courts do not

presume validity, and give the hearing officers' decisions in these areas no weight. Reid, 401

F.3d at 521.

## BACKGROUND

Ms. Harris' daughter D.H. is an eleven-year-old girl currently attending Rock Creek

Academy, a full-time special education placement. R. at 2. Ms. Harris and D.H. reside together

in the District of Columbia. R. at 2, 11. DCPS has determined that D.H. requires special

education and related services as a qualified child with multiple disabilities. Exhibit 1.

On or about April 28, 2006, the District of Columbia Public Schools ("DCPS")

completed a functional behavioral assessment ("FBA") of D.H. Exhibit 2.[1] An FBA is an

individualized assessment performed to determine the causes, intended results, and the actual

consequences of a child's behavior, which may include environmental, situational, and emotional

factors. See Exhibit 3. An FBA is typically used to develop a behavior intervention plan, part of

the child's IEP. See Exhibit 3.

On February 8, 2007, Ms. Harris sent DCPS a request for funding of an independent FBA

on the basis of the inadequacy of the FBA performed by DCPS, pursuant to 34 C.F.R. § 300.502.

---

[1] Though Rock Creek Academy conducted the FBA itself, it remains the responsibility of DCPS, the local educational agency, pursuant to 34 C.F.R. § 300.146.

R. at 14. DCPS never requested a due process hearing to show that its evaluation was appropriate or ensured that D.H. received an independent FBA at public expense. See R. at 31, 49, 53.

On March 2, 2007, Ms. Harris filed an administrative "due process complaint" against DCPS, alleging that DCPS had failed to comply with a request for funding sent pursuant to 34 C.F.R. §300.502. R. at 11. DCPS did not file or serve a response to the complaint. R. at 4, 17.

On May 2, 2007, the District of Columbia State Enforcement and Investigation Division held a due process hearing, and on May 8, 2007, the Hearing Officer dismissed the complaint in a written Hearing Officer's Determination ("HOD"). R. at 2.

In the May 8, 2007 HOD, the Hearing Officer explained the dismissal of the complaint with the statement that "[t]he hearing officer understood an educational evaluation as it appears at 34 CFR 300.502 as being an evaluation to confirm or rule out one of the disabilities setout [sic] at 34 CFR 300.8(c) and determined that a functional behavioral assessment was not one." R. at 4.

## ARGUMENT

## I.  A FUNCTIONAL BEHAVIORAL ASSESSMENT IS AN EVALUATION FOR PURPOSES OF 34 C.F.R. § 300.502

The Hearing Officer dismissed Ms. Harris' claim that DCPS had failed to fulfill its obligations, under 34 C.F.R. § 300.502, either to fund an independent evaluation or to initiate proceedings to defend its evaluation because "the hearing officer understood" that "evaluation" as it is used in that section refers only to "an evaluation to confirm or rule out one of the disabilities setout [sic] at 34 CFR 300.8(c)," and an FBA is not such an evaluation. R. at 4. The Hearing Officer offered no explanation for that interpretation of the regulation.

Section 300.502 does not refer to § 300.8(c). Section 300.502 does not define "evaluation," but other regulation sections do. An evaluation consists of "procedures used in accordance with [34 C.F.R.] §§ 300.304 through 300.311 to determine whether a child has a disability and the nature and extent of the special education and related services that the child needs." 34 C.F.R. § 300.15.[2]

An FBA is unquestionably an assessment, a set of procedures, designed "to determine…the nature and extent of the special education and related services that [a] child needs." 34 C.F.R. § 300.15. An FBA is an assessment of the causes, intended results, and actual consequences of a child's behaviors. See Exhibits 3. An FBA is typically used in developing a behavior intervention plan, a part of some students' IEPs, and the IDEA requires the performance of an FBA under certain circumstances. See Exhibit 3; 20 U.S.C. § 1415(k)(1)(D)(ii). A behavior intervention plan is the IEP team's method of prescribing and implementing positive behavioral interventions as required by 20 U.S.C. § 1414 (d)(3)(B)(i). See Alex R. ex rel. Beth R. v. Forrestville Valley School, 375 F.3d 603, 614 (7th Cir. 2004) ("[A] behavioral intervention plan could be warranted…when the disabled student exhibits behavior that impedes the learning of himself or others").

Because the FBA directs the development of that plan, the FBA plainly contributes to the determination of "the nature and extent of the special education and related services that the

_____

[2] The procedures identified in the regulation sections referenced include assessments that "[a]re used for the purposes for which the assessments or measures are valid and reliable … [which] include those tailored to assess specific areas of educational need and not merely those that are designed to provide a single general intelligence quotient[.]" 34 C.F.R. § 300.304 (c). Furthermore, an LEA must ensure that "[t]he child is assessed in all areas related to the suspected disability, including, if appropriate, health, vision, hearing, social and emotional status, general intelligence, academic performance, communicative status, and motor abilities … [and that] [a]ssessment tools and strategies that provide relevant information that directly assists persons in determining the educational needs of the child are provided." Id.

child needs." 34 C.F.R. § 300.15. It is therefore an evaluation for purposes of 34 C.F.R. § 300.502.

## II.     MS. HARRIS IS ENTITLED TO AN INDEPENDENT EVALUATION AT PUBLIC EXPENSE

The IDEA guarantees the parent of a child with a disability the opportunity "to obtain an independent educational evaluation of the child." 20 U.S.C. § 1415(b)(1). The procedures for obtaining funding for an independent evaluation are set out at 34 C.F.R. § 300.502, which guarantee a parent "the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by the public agency…" and further states:

> (2) If a parent requests an independent educational evaluation at public expense, the public agency must, without unnecessary delay, either--
> (i) File a due process complaint to request a hearing to show that its evaluation is appropriate; or
> (ii) Ensure that an independent educational evaluation is provided at public expense, unless the agency demonstrates in a hearing pursuant to §§300.507 through 300.513 that the evaluation obtained by the parent did not meet agency criteria.

34 C.F.R. § 300.502(b).

Aside from the Hearing Officer's unsupported restriction of the term "evaluation," there is no dispute that Ms. Harris requested an independent evaluation. There is no dispute that in response DCPS neither filed a due process complaint nor ensured the funding of the evaluation.

DCPS having failed adequately to provide for an independent evaluation, the Court should order DCPS to do so now.

## CONCLUSION

For the reasons stated above, the Court should grant Ms. Harris summary judgment on her claim and grant her the relief requested.

Respectfully submitted,

/s/ Douglas Tyrka
Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave. NW, Suite 400
Washington, DC  20009
(ph) (202) 265-4260
(f) (202) 265-4264
tyrka@tyrkalaw.com

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| **DENITA HARRIS** | ) | |
| **Plaintiff,** | ) | |
|  | ) | |
| **v.** | ) | **Civil Action No. 07-1422 (RCL)** |
|  | ) | |
| **DISTRICT OF COLUMBIA** | ) | |
| **Defendant.** | ) | |

_____

### PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1. Ms. Harris' daughter D.H. is an eleven-year-old girl currently attending Rock Creek Academy, a full-time special education placement. R. at 2.

2. Ms. Harris and D.H. reside together in the District of Columbia. R. at 2, 11.

3. DCPS has determined that D.H. requires special education and related services as a qualified child with multiple disabilities. Exhibit 1.

4. On or about April 28, 2006, the District of Columbia Public Schools ("DCPS") completed a functional behavioral assessment ("FBA") of D.H. R. at 14. Exhibit 2.

5. An FBA is an individualized assessment performed to determine the causes, intended results, and the actual consequences of a child's behavior, which may include environmental, situational, and emotional factors. Exhibit 3.

6. An FBA is typically used to develop a behavior intervention plan, part of a child's IEP. Exhibit 3.

7. On February 8, 2007, Ms. Harris, through counsel, sent a request for funding of an independent FBA for D.H. to the DCPS Office of Mediation and Compliance. R. at 14.

8.     DCPS did not, at any time, request a due process hearing to show that its FBA was

appropriate. <u>See</u> R. at 31, 49, 53.

9.     DCPS did not, at any time, ensure that D.H. received an independent FBA at public

expense. <u>See</u> R. at 31, 49, 53.

10.    On  March 2, 2007, Ms. Harris filed an administrative "due process complaint"

against DCPS. R. at 11.

11.    DCPS did not serve a Response to the administrative complaint on Ms. Harris. R. at

4, 17.

12.    On May 2, 2007, the DCPS State Enforcement and Investigation Division convened

a due process hearing of Ms. Harris' administrative complaint. R. at 2.

13.    On May 8, 2007, the Hearing Officer dismissed Ms. Harris' administrative

complaint in a written Hearing Officer's Determination. R. at 2.


Respectfully submitted,

/s/_____
Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave. NW, Suite 400
Washington, DC  20009
(ph) (202) 265-4260
(f) (202) 265-4264
tyrka@tyrkalaw.com

IEP Report for Student ID: 9063559

### DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### WASHINGTON, D.C.
### INDIVIDUALIZED EDUCATIONAL PROGRAM

| I. IDENTIFICATION INFORMATION |
| --- |

**Student Name: Last** _He____ **First:** _De____ **MI:** __
**StudentID:** _9063559_ **Soc. Sec. No.:** __ **Age:** _10_ **Grade:** _05_
**Gender:** _F_ **Date of Birth:** ___1996 **Ethnic Group:** _Black_
**Address:** _2633 Stanton Rd. Quad 8. Apt. 103. Washington, D.C. 20020_
☐ **Non-attending**
**Attending School:** _Rock Creek Academy_ **Home School:** _Wilkinson ES_
☑ **Elem.** ☐ **Mid/JHS** ☐ **SHS** ☐ **CWS**
**Parent:** _Denita Harris_

**Address of:** ☑ **Parent** ☐ **Guardian** ☐ **Surrogate**
_2907 Stanton Rd., S.E., #203, Washington, D.C. 20020_
**Telephone: Home** _202-889-5590_ **Telephone: Work** __

| II. CURRENT INFORMATION |
| --- |

Date of IEP Meeting: _8/29/2006_
Date of Last IEP _10/19/2005_
Meeting:
Date of Most Recent _4/12/2005_
Eligibility Decision:
Purpose of IEP Conference:

☐ Initial IEP     ☑ Review of IEP

☐ Requested Eval     ☐ 3yr ReEval.

Indicate Level of Standardized Assessment:
ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)
☐ BEHAVIOR     ☑ ESY
☑ TRANSPORTATION     ☐ TRANSITION

| III. LANGUAGE | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
| --- | --- | --- | --- | --- | --- |
| **Student** | English | English | English | Native Language | Oral N/A |
| **Parent** | English | English | English | Native Language | Rdg./Written |
| **Home** | English | English | English | Native Language | Instrument Date |

| IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| **SERVICES** | **SETTING** | | | **FREQUENCY** | | **PROVIDER** | **BEGINNING DATE** | **DURATION** |
| | GenEd | SpEd | Total | Hr./Min | D/W/M. | (by discipline) | mm/dd/yyyy | # wks/mos |
| Specialized Instruction | ☐ | ☑ | 26 | hr | W | Special Educator | 08/29/2006 | 11 mos |
| Psychological Counseling | ☐ | ☑ | 1.5 | hr | W | Psychologist/Social Worker | 08/29/2006 | 11 mos |
| | | **Total** | **27.5 Hours Per Week** | | | | | |

| V. DISABILITY(IES) Multiple Disability, Emotional Disability, Other Health Impairment, Specific Learning Disability | Percent of time in Specialized Instruction and Related Services |
| --- | --- |
| ☐ (Check if setting is general Ed.) | ☐ 0-20%  ☐ 21-60%  ☑ 61-100% |
| | Percent of time NOT in Regular Education Setting _100%_ |

**VI. IEP TEAM (Participants in the development of the IEP)** Print and sign your name below.
Ms. Sharon Millis, Ed. Advocate
Ms. Kress, Clinical Therapist
Ms. Long, Special Educator
Ms. Page, IEP Coordinator
Ms. Denita Harris, Parent
Ms. Annunziata spec. educ.

☐ *I AGREE* with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of hte procedureal safeguards and parent rights pertaining to special education.
Parent/Guardian Signature _____ Date _8/29/06_

**Exhibit 1**
**07-1422(RCL)**

IEP Report for Student ID: 9063559                                                                    Page 1 of 11

**VIII. SPECIALIZED SERVICES**

Goal Number: __1__
Area Addressed By Goal: __Math__

**ANNUAL GOAL: (including mastery criteria)**
H▮▮▮, D▮▮▮ will demonstrate one year of progress in mathematics.
**Provider(s):**
☐ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☐ Documented Observation  ☐ Report  ☐ Other

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
Given a written assignment at the instructional level, H▮▮▮, D▮▮▮ will add/subtract multi-digit numbers with regrouping with 80% accuracy in four of five trials.
**Date Mastered:  Evaluation Schedule:** __

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
Given a written assignment at the instructional level, H▮▮▮, D▮▮▮ will correctly write a percent as a fraction 80% of the time in four of five trials.
**Date Mastered:  Evaluation Schedule:** __

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
In daily class assignments and in four of five trials, H▮▮▮, D▮▮▮ will read, write, and apply selected intermediate mathematical vocabulary words, such as: whole number, million, ten million, hundred million, factor, rounding (to the nearest ten, hundred, thousand, million), fraction, prime numbers, composite numbers with 80% accuracy in four out of five trials.
**Date Mastered:  Evaluation Schedule:** __

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
Given blank graph, D▮▮▮ will identify, locate and create the x and y coordinates, negative and positive number points and be able to graph coordinates on a graph with 80% accuracy in four out of five trials.
**Date Mastered:  Evaluation Schedule:** __

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
Given a written assignment at the instructional level, H▮▮▮, D▮▮▮ will multiply and divide multi-digit numbers with regrouping and remainders with 80% accuracy in four of five trials.
**Date Mastered:  Evaluation Schedule:** __

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
When given a geometric shape, D▮▮▮ will calculate the perimeter, area, volume and/or circumference with 80% accuracy in four out of five trials.
**Date Mastered:  Evaluation Schedule:** __

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
When working with fractions, D▮▮▮ will be able to identify the numorator, denominator, like/unlike fractions, greatest common factor and least common multiple with 80% accuracy in four out of five trials.
**Date Mastered:  Evaluation Schedule:** __

**Exhibit 1**
**07-1422(RCL)**

IEP Report for Student ID: 9063559

## VIII. SPECIALIZED SERVICES

| | Goal Number: _1_ |
|---|---|
| | Area Addressed By Goal: _Reading_ |

**ANNUAL GOAL: (including mastery criteria)**
H██ D███ will demonstrate one year of progress in reading.
**Provider(s):**
☐ Portfolio ☐ Log ☐ Chart ☒ Test ☐ Documented Observation ☐ Report ☐ Other

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
D██ will recognize 200 sight words with 80% accuracy.
**Date Mastered: Evaluation Schedule:** __

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
D██ will apply phonics rules to text when reading in 4 out 5 trials.
**Date Mastered: Evaluation Schedule:** __

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
D██ will identify words cue, double vowel, vete and final single vowel in 4 out of 5 trials.
**Date Mastered: Evaluation Schedule:** __

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
D██ will spell 200 high frequency words correctly with 80% accuracy.
**Date Mastered: Evaluation Schedule:** __

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
D██ will apply commom spelling patterns rules for spelling words in 4 out of 5 trials.
**Date Mastered: Evaluation Schedule:** __

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
D██ will use word attack skills and context clues to identify unknown words in 4 out of trials.
**Date Mastered: Evaluation Schedule:** __

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
D██ will retell a story in correct sequence and details in 4 out of 5 trials.
**Date Mastered: Evaluation Schedule:** __

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
D██ will identify story elements ( setting, characters, events) from a passage read with 80% accuracy.
**Date Mastered: Evaluation Schedule:** __

**Exhibit 1**
**07-1422(RCL)**

IEP Report for Student ID: 9063559

**VIII. SPECIALIZED SERVICES**

Goal Number: _1_

**ANNUAL GOAL: (including mastery criteria)**      Area Addressed By Goal: _Social Behavioral_
D▓▓ will demonstrate an improvement in her interactions with peers and adults as evidenced by 80% mastery of the following objectives.
**Provider(s):** Social Worker/Counselor/Psychologist
☐ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☑ Documented Observation  ☐ Report  ☑ Other Quarterly Progress Reports

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
D▓▓ will interact with adults and peers in an approrpriate manner with minimal redirection three out of four times.
**Date Mastered:  Evaluation Schedule:** _Quarterly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
D▓▓ will identify and discuss traits which are desireable in friendship and those traits which she posses in two out of three prompts.
**Date Mastered:  Evaluation Schedule:** _Quarterly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
D▓▓ will identify and discuss ways of sustaining healthy relationships two out of three times she is prompted.
**Date Mastered:  Evaluation Schedule:** _Quarterly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
D▓▓ will identify and implement three techniques for creating and maintaining friendships two out of three times she is prompted.
**Date Mastered:  Evaluation Schedule:** _Quarterly_

**Exhibit 1**
**07-1422(RCL)**

**VIII. SPECIALIZED SERVICES**

---

Goal Number:  2

**ANNUAL GOAL: (including mastery criteria)**                Area Addressed By Goal:  Social Behavioral
D⬛ will improve her problem sovling and conflict resolution skills through 80% mastery of the following objectives.
**Provider(s):** Social Worker/Counselor/Psychologist
☐ Portfolio   ☐ Log   ☐ Chart   ☐ Test   ☑ Documented Observation   ☐ Report   ☑ Other Quarterly Progress Reports

---

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
D⬛ will identify her role in a problem/conflict situation two out of three times.
**Date Mastered:   Evaluation Schedule:**  _Quarterly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
D⬛ will accurately sequence events that lead to a problem situaion two out of three times.
**Date Mastered:   Evaluation Schedule:**  _Quarterly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
D⬛ will identify and implement three ways to prevent a problem or conflict situation from escalating two out of three times.
**Date Mastered:   Evaluation Schedule:**  _Quarterly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
D⬛ will identify and implement three ways to prevent a problem situation from occuring two out of three times.
**Date Mastered:   Evaluation Schedule:**  _Quarterly_

**Exhibit 1**
**07-1422(RCL)**

IEP Report for Student ID: 9063559

## VIII. SPECIALIZED SERVICES

**Goal Number:** _3_
**Area Addressed By Goal:** _Social Behavioral_

**ANNUAL GOAL: (including mastery criteria)**
D⬤ will improve her self-concept/self-esteem through 80% mastery of the following goals.
**Provider(s):** Social Worker/Counselor/Psychologist
☐ Portfolio   ☐ Log   ☐ Chart   ☐ Test   ☑ Documented Observation   ☐ Report   ☑ Other Quarterly Progress Reports

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
D⬤ will list three positive traits and/or accomplishments two when prompted.
**Date Mastered:   Evaluation Schedule:** _Quarterly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
D⬤ will describe her perceptopn of her ideal self realtive to her peer group two out of three times prompted.
**Date Mastered:   Evaluation Schedule:** _Quarterly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
D⬤ will demonstrate an increase in her self-esteem/self-concept in relation to her peer relationships through the establishment of positve peer relationships and less than two peer conflicts per month.
**Date Mastered:   Evaluation Schedule:** _Quarterly_

**Exhibit 1**
**07-1422(RCL)**

**VIII. SPECIALIZED SERVICES**

---

Goal Number: _1_

**ANNUAL GOAL: (including mastery criteria)**    Area Addressed By Goal: _Written Language_
H⬛, D⬛ will demonstrate one year of progress in written language.
**Provider(s):**
☐ Portfolio  ☐ Log  ☐ Chart  ☑ Test  ☐ Documented Observation  ☑ Report  ☐ Other

---

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
D⬛ will write sentences with proper capitalization. punctutation, and spelling in 4 out of five trials.
**Date Mastered:  Evaluation Schedule:** __

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
D⬛ will construct sentences that coonvey a clear message, ideas or thought in 4 out of 5 trials.
**Date Mastered:  Evaluation Schedule:** __

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
D⬛ will distinguish between correct/complete sentences fragment in 4 out of 5 trials.
**Date Mastered:  Evaluation Schedule:** __

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
D⬛ will write a beginning, middle, and ending for a story in 4 out of five trials.
**Date Mastered:  Evaluation Schedule:** __

**Exhibit 1**
**07-1422(RCL)**

IEP Report for Student ID: 9063559                                           Page 7 of 11

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINITATION SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in regular education? ○ Yes
◉ No

Explanation for removal out of regular education classroom.
Denita needs cannot be met in the general education setting.

## X. SUPPLEMENTAL AIDS AND SERVICES

| CLASSROOM NEEDS (Do not name products or companies.) | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hr.Min | D/W/M | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing: ☐ None Needed

| | |
|---|---|
| Timing/Scheduling: | Extended time |
| Setting: | Small group setting |
| Presentation: | Repeated directions |
| Response: | Extra Response time |
| Equipment: | |

## XI. STATE AND DISTRICT ASSESSMENTS

☐ Level I  Tested with non-disabled peers under standard conditions without accommodations.

☑ Level III  (Describe non-uniform conditions for levelII) Tested under non-standard conditions with permissible accommodations.

☐ Level V  Portfolio:

☐ Level II  (Describe accommodations for level II) Tested under standard conditions with special accommodations.

☐ Level IV  (Describe the alternative assessment)

## XII. AREAS REQUIRING SPECIALIZED INSTRUCTION AND RELATED SERVICES:

☑ Reading        ☐ Physical            ☐ Transition          ☐ Language Arts/English
☑ Mathmatics     ☑ Social Emotional    ☐ Vocational          ☐ Social Sciences
☑ Written Expression  ☐ Physical Development  ☐ Independent Living  ☐ Biolocial & Physical Science
☐ Other          ☐ Speech/Language     ☐ FineArts
☐ None    Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| General Education | ○ Accept ○ Reject | Continued school failure |
| Combination Setting | ○ Accept ○ Reject | Continued school failure |
| Out of general education | ◉ Accept ○ Reject | Impact of self-esteem |

Modifications(s)/Accommodation(s) to address the harmful effects:
D▇▇'s needs will be met in weekly counseling sessions.
Location for Services: Rock Creek Academy

**Exhibit 1**
**07-1422(RCL)**

IEP Report for Student ID: 9063559

## DOCUMENTED LEVEL OF SERVICE (PERM)
### Complete and attach to MDT/IEP meeting notes

School:  Rock Creek Academy    Principal:  Semanthe Bright    Special Education Coordinator:  Arvette D. Page
Date:  8/29/2006    Case Manager:  Ms. Kress    Technical Support Supervisor: __
Student:  H___ D___    DOB: ___/1996    Age:  10    Grade:  05    ID#:  9063559    SSN#: __
Parent:  Denita Harris    Telephone (H):  202-889-5590    Telephone (W): __
Address:  2633 Stanton Rd, Quad 8, Apt. 103, Washington, D.C.  20020
REFERRAL SOURCE: (Check)  ○ 120 Day  ○ Reeval  ○ HOD  ○ SA  ○ MA  ● Nonpublic
          ○ Residential  ○ Citywide  ○ Courts  ○ Local School  ○ Other __
Previous least restrictive environment (LRE Setting):  Out of general education

### JUSTIFICATION FOR SETTING CONSIDERATION
#### (Submit TAT/MDT Documentation)
##### SUPPORTIVE DATA/DOCUMENTATION

| 2. ACCOMMODATIONS/MODIFICATIONS | 3. DATA REQUIREMENTS | | |
|---|---|---|---|
| Small group setting, extended time, periodic break, | Current IEP | ● Yes | ○ No |
| | Signatures of required participants (MDT Only) | ☑ Yes | |
| | Intervention Behavior Plan | ☑ Yes | |
| | Copies of current class work and homework assignments | ☐ Yes | |
| | Medical Reports | ○ Yes | ○ No |
| | Clinical Reports | ● Yes | ○ No |
| | Psychiatric Reports | ○ Yes | ○ No |
| | Medications | ○ Yes | ○ No |
| | Attendance Record | ☐ Yes | |
| | Copies of most recent evaluation(s) | ☑ Yes | |

| 4. Results of all interventions: (TAT, MDT, etc. and attach meeting notes) | 5. Resources needed for program implementation |
|---|---|
| Please see IEP meeting notes. | N/A |

### 6. CURRENT SETTING CONSIDERATIONS

| ROW | SETTING in neighborhood school (Determined through the IEP team.) | SERVICE PROVIDER (Based on documented need) | LEVEL OF SERVICE (Based on documented need) |
|---|---|---|---|
| 1 | ☐ In general education classroom setting | ☐ general educators with consultation from special education staff | ☐ between 0% and 20% of service time |
| 2 | ☐ combination general education and resource classroom | ☐ combination of general educators, special educators and related service providers | ☐ between 21% and 60% of service time |
| 3 | ☑ *out of general education classroom | ☑ special educators and related service providers | ☑ between 61% and 100% of service time |

*In providing or arranging for the provision of nonacademic and extracurricular service and activities, including meals, recess period, and the services and activies, each public agency shall ensure that each child with a disability participates with non-disabled children in those services and activies (300.306) to the maximum extent appropriate to the needs of that child (300.553) Nonacademic settings)

Check the level of need as indicated:
#### DIRECTIONS:

| If two or three boxes are checked in the Row 1, check LOW | If one box is checked in each row, |
|---|---|
| If two or three boxes are checked in the Row 2, check MODERATE | check either MODERATE or HIGH, |
| If two or three boxes are checked in the Row 3, check HIGH | depending on the need of the student. |

| 7. LEVEL OF NEED | | |
|---|---|---|
| ○ LOW | ○ MODERATE | ● HIGH |

**Exhibit 1**
**07-1422(RCL)**

IEP Report for Student ID: 9063559

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**

| | |
|---|---|
| | IEP Attachment B<br>Transportation |

TRANSPORTATION DIVISION
STUDENT TRANSPORTATION
DATA FORM

__2006-2007__
School Year

__9063559__
STUDENT IDENTIFICATION NUMBER

(MDT must first determine if student meets the requirements for transportation services and has it included in the IEP)
Person Making Request: __Arvette Page__
Date of Request: __8/29/2006__
Status of Request: ___
Date Request Received: ___
Person Receiving Request: ___

__Denita Harris__
Parent / Guardian (Print legibly or type)

__202-889-5590__
Telephone (H)

_____
Telephone (W)

__Keisha Samuels__
Emergency Contact

__Aunt__
Relationship

__202581-1200__
Telephone No.

__202-627-9676__
Page/Cell No.

Students will be taken to a central location until 6:00 p.m. If the bus attendants are unable to deliver them to the designated location. After 6:00 p.m. the police will be contacted. This year's central location is

H___                          D___
Student Last Name          First Name          MI
__2633 Stanton Rd, Quad 8, Apt. 103__
Address
__Washington__          __D.C.__          __20020__
City                State          Zip Code
__/1996__  __F__  __English__  __Rock Creek Academy, Inc. (202) 378-1400__
DOB    Gender  Primary Language  Submitting School and Telephone Number
__Multiple Disability__
Disability Classification          Medical Issues

MODE OF TRANSPORTATION ☑ *Bus ☐ Tokens ☐ Farecards
*SPECIAL ACCOMMODATIONS FOR BUS
Height ___ Weight ___
☐ Oxygen ☐ Tracheotomy Tube ☐ Seizures ☐ Helmet
☐ Harness ☐ 1:1 Aide ☐ Behavioral Issue
Medication ___ Specific Allergies ___
Dosage Required during transporation:
○ Yes ○ No    Dosage ○ PM ○ AM
☐ Mobility ☐ Ambulatory ( ☐ Cane, ☐ Crutch, ☐ Walker)
          ☐ Ambulatory w/ assistance ( ☐ Cane, ☐ Crutch, ☐ Walker)
          ☐ Non Ambulatory ( ☐ Standard, ☐ Motorized,
          ☐ Oversized w/lap tray ○ Yes ○ No )
☐ Car Seat          ☐ Positioning Device ___
☐ Special Restraint  ☐ Other, Describe: ___

Click one of the following:
☐ **AM Pick-up & Drop-off** is the same as the student address.
☐ AM Pick-up Address: ___ Phone: ___
☐ PM Pick-up Address: ___ Phone: ___

---

**Transportation will NOT be provided without confirmed placement through the proper procedures. Justification for other than neighborhood settings must be explained on the back by the shcool oficial requesting the transportation service.**

__Arvette D. Page__          __202-378-1388__                                    __8/29/2006__
School Official requesting transportation service:  Telephone No.                          Date
__Rock Creek Academy__          __4401 Connecticut Avenue, NW Washington, DC 20008__          __202-378-1388__
School to Attend:          Address of School          Telephone No.

Questions may be directed to the Special Education Transportation Liaison.

**Exhibit 1**
**07-1422(RCL)**



Rock Creek Academy, Inc.
4401 Connecticut Ave. NW
Washington, DC 20008
202.378.1400: voice

## FUNCTIONAL BEHAVIOR ASSESSMENT

NAME: D⬛ H⬛
DOB: ⬛/1996
AGE: 9 years, ⬛ months
DOR: 04/28/06

SCHOOL: Rock Creek Academy
GRADE: 3rd Grade
EXAMINER: Melanie Gilliam, LGSW

## EVALUATION METHODS:

Records Review
Interviews
School/Classroom Visit

## REASON FOR REFERRAL:

D⬛ H⬛ is a 9-year,⬛month-old, African-American female, who was referred by her academic placement for a functional behavior assessment. The assessment will investigate the behaviors that interfere with her academic and social interactions with both peers and adults; and directly impact her academic achievement. It will then offer recommendations for managing this problematic behavioral pattern in the school setting.

## RELEVANT BACKGROUND INFORMATION:

On 12/16/04 and 12/20/04, D⬛ was evaluated by Robert Barnes, Ph.D., DCPS Psychologist. On the WISC-IV, D⬛ obtained a Low Average/Average verbal reasoning score (VCI=91, 27th percentile) and an Average non-verbal reasoning score (PRI=102, 55th percentile). Her attention/concentration abilities were in the High Average range (WMI=113) while her processing speed score was in the Average/Above Average range (FSIQ=109, 73rd percentile). Her overall Full Scale score was placed in the Average range (FSIQ=103, 58th percentile). Academic abilities, as assessed by the WIAT-II, indicated single word reading skills in the Borderline/Low Average range (SS=77, 6th percentile), decoding skills in the Average range (SS=94, 34th percentile), and reading comprehension abilities within the Extremely Low/Borderline range (SS=70, 2nd percentile). Math calculation skills were in the Superior range (SS=121, 92nd percentile) and math reasoning abilities were within the Average range (SS=95, 37th percentile). Spelling skills were placed in the Borderline/Low Average range (SS=83, 13th percentile). She was diagnosed with a Reading Disorder and an Adjustment Disorder with Mixed Disturbance of Emotions and Conduct.

**Exhibit 2
07-1422(RCL)**

A clinical psychological evaluation completed by evaluator, Kelurah Comilang, Ph.D., on May 17, 2005 details her overall psychological functioning. D████'s behavioral functioning was assessed by gathering information from her mother and her teacher on a behavior rating scale (BASC-2). Ms. Harris' (D████'s mother) responses on this test elevated one of the validity scales indicating either extraordinary maladaptive behavior or that she rated D████'s behavior more severely than is warranted. These responses indicated "Clinically Significant" problems in the areas of aggression, hyperactivity, conduct, depression, attention, atypicality, adaptability, social skills, leadership activities of daily living, and functional communication and an "At-Risk" problem within the area of withdrawal behaviors when compared to the general norm group. Ms. Faulkner, D████'s teacher at the time, gave responses the indicated that D████ may have "Clinically Significant" problems in the area of hyperactivity, aggression, conduct, anxiety, depression, somatization, learning, and atypicality, and "At-Risk" problems in the areas of attention, adaptability, socials skills, study skills, and functional communication.

D████'s mother and teacher were also asked to complete a rating scale that assesses behaviors associated with Attention Deficit Hyperactivity Disorder (ADHD). Both Ms. Harris' and Ms. Faulkner's ratings yielded scores within the "Clinically Significant" range for both inattentive (SS=2, SS=6) and hyper-impulsive behaviors (SS=1, SS=2).

On the Negativity Validity Scale on the BRIEF, Ms. Harris' and Ms. Faulkner's responses indicated concern that D████'s ability to inhibit impulsive responses, adjust to changes in routine or task demands, modulate emotions, sustain working memory, plan and organize problem solving strategies, organize materials, and monitor her own behavior. D████'s elevated scores on the Shift and the Emotional Control scales of the BRIEF suggest significant problem-solving rigidity combined with emotional non-functioning, indicating a tendency to lose emotional control when routines or perspectives are challenged and/or flexibility is required.

On the Children's Depression Inventory (CDI), D████'s responses were not indicative of significant symptoms of depression. On the Revised Children's Manifest Anxiety Scale (RCMAS), her responses were not indicative of significant symptoms of anxiety, but indicated a high need for social desirability or acceptance, which may be related to feelings of social isolation or rejection.

The results of this evaluation and reports of D████'s behavior indicate that D████ has difficulties with her attention, level of activity, and executive functioning. In conjunction with these difficulties are her disruptive behaviors within the classroom, problems with peers, and feelings of social isolation and rejection. This evaluation yielded the following diagnostic impression: *Axis I*: Attention Deficit Hyperactivity Disorder (combined type) and Reading Disorder (by history); *Axis II*: none; *Axis III*: none; *Axis IV*: Educational Problems, Interpersonal Problems, Problems with Primary Support; *Axis V*: GAF - 51.

The most recent IEP in D████'s file from 4/12/05 labels her as a child who is multiple disabled (learning disabled and emotionally disturbed). On 5/3/05, D████'s IEP was updated and her hours of specialized instruction were increased from 10 to 12.5 hours per week with 1.5 hours per week of psychological counseling.

**Exhibit 2**
**07-1422(RCL)**

## OBSERVATIONS OF BEHAVIOR:

D██ H██ currently attends Rock Creek Academy in Northwest DC. Her teacher, Ms. Long, has been D██'s teacher for an undisclosed amount of time. However, she was intimately aware of D██'s actions. The students were participating in an interactive reading lesson. The room was very rich in color, displaying information from various subject matter as well as students work. There were 6 total desks in the room all facing toward the front of the classroom with the teacher's desk behind them. There were a total of 5 students in the classroom with D██ being the only female student. D██ was sitting at the front of the classroom, farthest from the teacher's desk but closest to the classroom board and the teacher while she was standing during the lesson. The environment of the school itself was quiet with the occasional audible sounds of students throughout the hallway.

When the examiner arrived for the 45-minute observation, D██ was not present. Ms. Long informed the examiner that D██ was in the Program Director's office due to her recent inappropriate behaviors toward Ms. V. Long and her classroom peers. About two minutes later, D██ arrived back to the classroom, escorted by Ms. T. Webb, the Program Director. Ms. Webb instructed D██ to sit at her desk, turn all the way around and begin her work. D██ would not comply, even after several redirectives. Ms. Webb then politely turned D██ around to face forward, but as soon as Ms. Webb left the classroom, D██ re-positioned her body sideways again. Then she received a directive from Ms. Long reiterating Ms. Webb's directive to turn all the way around in her seat. D██ sulked and then asked if she could call her mother. Ms. Long told her no and directed her to turn around and complete her warm-up exercise. D██ exclaimed, "This is how I sit!" "I've already done this (the warm-up exercise). I don't like this school!" Ms. Long informed D██ that she was not earning her behavioral points right now. With this, D██ exclaimed (still facing sideways in chair), "I already know! You're not going to give me all my points anyway!" Ms. Long asked her why she thought she wouldn't receive all of her points from her, and D██ explained, "'Cause you don't like me!" Ms. Long explained that the statement was not true, and she asked D██ again to turn around and complete her assignment. When Ms. Long turned to focus her attention to a student asking a questions, D██ got up and left the room without permission. Ms. Long used to classroom phone to call to report D██ being out of location. Within a minute, Mr. Vital, teaching staff, escorted D██ back to the classroom. D██ would not come inside, exclaiming that she did not want to be in this classroom. Ms. C. Kress, D██'s Clinical Therapist, overheard what was going on and tried to intervene in the hallway to get D██ to go back into classroom and exhibit appropriate behavior. D██ eventually returned to classroom and sat in her chair, with Ms. Kress standing next to her. Ms. Long gave her a worksheet to complete. D██ exclaimed loudly, "I already did my homework!" Ms. Long just continued with class. With assistance from Ms. Kress, D██ eventually turned around in her seat, and followed along on the worksheet with her class. Her facial expression showed that she was possibly upset and/or angry. Ms. Long asked for D██'s verbal participation in reading the next sentence. D██ did so and answered questions Ms. Long asked of her pertaining to the lesson. Ms. Long and Ms. Kress gave D██ verbal praise for following along and providing the correct answers. D██ slightly smiled. After Ms. Kress stayed for a few more minutes, she whispered to D██ that she was leaving but to keep up the good work. D██ responded with "ok" and asked Ms. Long if she could read the next sentence. Ms. Long allowed her to do so. While D██ was trying to answer question, other students were calling out answers and making inappropriate comments about D██ not getting answer correct. Ms. Long assisted D██ with locating the correct answer. Ms. Long collected this assignment and gave another. D██ was then on her knees in her chair looking out the window. Ms. Long instructed D██ to "sit down and do your work." D██ began her work, but did not sit down, and began calling out answers. Ms. Long gave

**Exhibit 2**
**07-1422(RCL)**

H████ D., Functional Behavior Assessment, 04/28/2006

D███ two directives to stop calling out answers. Here, D███ began turning around and making inappropriate comments to peers. She was redirected several times to stop, but she continued doing so. She was reminded about her behavioral points again, and stopped making comments. After completion of this assignment, D███ and other students participated in brief classroom spelling bee to review weekly spelling words. D███ participated without reservation, and after spelling bee was over, she asked Ms. Long "why you give us easy words?" This question caused a negative reaction from D███'s classmates, and some began calling her names because Ms. Long said that she would give more difficult words in the future. D███ rolled her eyes and made inappropriate comments back to the students and asked if she could complete her final assignment in the hallway. Ms. Long told her no and instructed her to stay in classroom. D███ got up and went into hallway anyway and began working. Ms. Kress spoke to D███ about this. Ms. Long then told her she could stay in hallway as long as she completed assignment. D███ did so. Examiner left classroom.

## RESULTS AND INTERPRETATION:

Ms. Long and Ms. Kress filled out separate reports and gave interviews. They both agree that D███ has negative peer interactions, especially with the male students in Ms. Long's class. Ms. Long reported that negative words are often exchanged between D███ and the other students and that "sometimes the arguments turn into D███ hitting on the boys." In addition to D███'s negative display of behavior towards peers, Ms. Kress reported that D███ does not accept responsibility for her instigation of negative behavior, and seems to "feed off the attention from peers despite it being negative." Ms. Long and Ms. Kress both agree that these behaviors often occur on a daily basis, but seem to have slightly decreased somewhat according to Ms. Kress. Ms. Kress and Ms. Long agree that these behaviors can become intense and occur during reading class (most often), social interaction with peers and/or free, unstructured time.

Ms. Long reported that the negative behaviors are usually precipitated by the male students in her class making inappropriate comments to or about D███ and/or vice versa. Ms. Kress believes that D███'s negative behaviors are precipitated by her not getting the attention she desires or bring in an unstructured setting. Ms. Long reported that she knows when D███ will display negative behaviors because she "can hear the anger in D███'s voice," and from the comments D███ makes. Ms. Long believes that D███ makes inappropriate comments to the male students in her reading class because she possibly likes them. Ms. Kress believes that D███ wants peer acceptance and approval. When D███ displays these negative behaviors, Ms. Kress reported that D███ will usually deny her involvement. Ms. Long reported that she will redirect D███ when she is displaying inappropriate behaviors, and tell her to ignore the negative comments of others. Ms. Long believes that D███ needs to "work on saying positive comments to people and learn how to ignore negative comments that are being said about her." Ms. Long feels that D███ is sometimes able to express herself to adults when she is angry or upset. Ms. Kress explained that an intervention that has been successful in the past was to immediately remove D███ from wherever she's displaying negative behaviors and to process with her to assist her in exhibiting appropriate behaviors. D███'s teachers, therapist, Program Director and parent, along with input from D███, should be involvement in planning and implementing a behavioral plan to address D███'s behavioral concerns.

**Exhibit 2
07-1422(RCL)**

H█████ D., Functional Behavior Assessment, 04/28/2006

## SUMMARY

D████ H████ is a 9-year █-month old girl who attends Rock Creek Academy. She has been identified as a child who is multiple disabled (learning disabled and emotionally disturbed). It is apparent from the examiner's observation, teacher and therapist interviews and reports and previous evaluations that D███'s behavior is directly impacting her academic progression. From these data sources, it appears evident that D███ has difficulty interacting appropriately with peers and seeks attention from both adults and peers. When upset, not getting the desired amount of attention, or in an unstructured environment, D███ displays negative behaviors such as making inappropriate comments, refusing to complete assignments or abide by set written and/or verbal rules and directives and will walk out of room without permission. D███ also has difficulty accepting responsibility for her negative behaviors. The intensity of these behaviors can be intense at times. Therefore, D███ is in need of specific behavior modification if the problematic behaviors that she demonstrates continue to interfere with her academic and social maturation.

## RECOMMENDATIONS

Based on these findings the following recommendations are suggested:

1. D███'s school should convene a multi-disciplinary team (MDT) to review and consider all the test results and the findings of the current evaluations and Functional Behavior Assessment and recommend an educational program that is appropriate to meet her emotional, behavioral, academic, and information processing needs. In addition the Intervention Behavior Plan must be created by the MDT and implemented in Student's IEP.
2. D███ should continue to be supplied with an educational setting with a small pupil to teacher ratio in order to support her academic strengths while addressing her learning impairments and social/emotional/behavioral needs.
3. D███ should continue to be provided in his educational setting with an opportunity for a high level of instruction that follows carefully on a day-to-day basis an individualized program that is carefully prepared to emphasize his strengths while delivering his Special Education program. In this setting a behavioral plan must be used consistently in all of her classes.
4. D███ should be provided emotional support throughout the day by individual and/or group counseling and therapeutic teaching techniques. In his educational setting, █████' instructors and school staff should be trained in ways to address █████'s emotional needs.
5. If warranted, D███ should be removed from the setting when displaying negative behaviors until she is able to calm down and return to original setting ready to display appropriate behaviors.
6. D███ would most likely benefit from some sort of token economy system, such as that employed at Rock Creek Academy, wherein she may chart and track instances on appropriate and inappropriate behavior. This will also assist her teachers and corresponding staff members a more concrete and specific measure of problematic behavior and serve as a baseline to measure growth or deviation from desired "on-target" behaviors.
7. D███ should be monitored and tracked closely by teacher with regular anecdotal notes, as well as tracked in the home environment concerning behaviors.

_Melanie Gilliam, LGSW, Clinical Therapist_    _LGSW_

**Exhibit 2**
**07-1422(RCL)**

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

DENITA HARRIS              )
            **Plaintiff,**      )
            )
**v.**                          )     **Civil Action No. 07-1422 (RCL)**
            )
**DISTRICT OF COLUMBIA**     )
           **Defendant.**     )
_____)

## VERIFIED STATEMENT OF SHARON MILLIS

1) I am over 18 years of age and competent to testify regarding the matters described herein.

2) I currently work as an independent special education advocate and expert with over 36 years of experience, including 12 years as a compliance monitor for DCPS, and have participated in literally thousands of IEP meetings.[1]

3) I represent Denita Harris and her daughter, D.H., as a special education advocate.

4) D.H.'s disability requires the implementations of positive behavioral interventions tailored to appropriate assessments and diagnoses of her behavior.

5) A functional behavioral assessment ("FBA") is performed to determine the causes of a child's behavior, which may include environmental, situational, and emotional factors, the child's intended result of those behaviors, and the actual consequences of that behavior.

6) The findings and results of an FBA are typically used to develop a child's "behavior intervention plan," which defines and prescribes specific positive behavioral

---

[1] See attached resumé.

**Exhibit 3**
**07-1422 (RCL)**

interventions, steps taken in response to a child's inappropriate behaviors, particular to that child.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on ___1/7/08___

Sharon Millis

*Sharon L. Millis*
11666 Cygnet Drive
Waldorf, Maryland 20601
(301) 870-6474

**Areas of**
**Expertise**

- Special Education Advocacy for Students with Disabilities
- Special Education Advocacy for Parents/Guardians of Students with Disabilities
- Expert Testimony in Special Education in Federal Court in Washington, DC and Maryland
- Expert Testimony in Special Education in Superior Court in Washington, DC
- Expert Testimony in Due Process Hearings
- Parent Training for IEPs, programming, evaluations and placement
- Individualized Education Program (IEP) construction, Teacher and Related Service Provider developmental training, writing and implementation
- School Program Observation and evaluation for adequacy and appropriateness
- Student Observation and evaluation for progress, placement and programming
- Public, Private and Residential School/Program Special Education Compliance Monitoring for IDEIA, State Standards (DC, MD & VA) and Municipal Regulations
- Public, Private and Special Education School/Program Evaluation
- Collection, Organization and Analysis of Special Education School/Program Data to determine degree of School/Program Compliance and Student Progress regarding implementation of IEPs and placement
- Review and Analysis of Student evaluations and educational records
- Observation and Analysis of Special Education Placements in order to determine appropriateness for Clients
- Special Education Curriculum Development and Staff Training in IEPs, developing and implementing academic and behavioral programs and special needs accommodations
- Observation and Analysis of Therapeutic Models for Special Needs Students
- Administrative, Teacher and Related Service Provider Technical Assistance/Instructional Support in Special Education
- Special Education Workshop Development and Presentation in IEPs, placement, program implementation and special needs accommodations
- School-Based Classroom Instruction
- Seriously Emotionally Disturbed Classroom Instruction
- Learning Disabled Classroom Instruction
- Administrative Debriefing regarding program implementation, program evaluation and student progress
- Federal, State and Local Special Education Policy and Procedure Development
- Special Education Teacher Mentoring and Training
- Inclusion Consultant for Special Education and General Education Classrooms and Staff
- Administrative and Volunteer Training for Compliance Monitoring
- Child Count Monitoring
- Dissemination, Analysis, Follow-up and Corrective Action Responses to Data collected from Special Education Programs and application to Program Evaluation and Student Progress

**Experience**
1998 – Present (Washington, DC and Maryland)
Independent Special Education Advocate/Expert for Special Education
Attorneys/Courts/Parents

1997 - 1998 (Washington, DC)    Moten Elementary School
Acting Director for P.A.C.E & Acting Assistant Principal
Directed Special Education Program for ED students requiring separate, full time
therapeutic setting

1986 - 1997 (Washington, DC)    Office of Corporate & Community Relations,
DCPS
SEA/LEA Special Education Compliance Monitor and Program Evaluator

1992 - 1993  (Washington, DC)    DC Department of Human Services
Educational Assessor, Therapeutic Counselor and Early Childhood Language
Facilitator, Chapter I Summer Enrichment Program

**Education**
Ongoing classes and workshops in Special Education and Related Areas to
maintain current certifications

1999 Completion of coursework for PhD in Administration and Training in Special
Education, George Washington University, Washington, DC

1997 Completion of LEAD Emerging Leaders Administrative Program, District of
Columbia Public Schools, Washington, DC

1997 Completion of NASSP administrative assessment and acceptance process,
District of Columbia Public School, Washington, DC

1972 M.Ed Special Education of the Seriously Emotionally Disturbed (Cum
Laude) Loyola College, Baltimore, Maryland

1970 B.S. Elementary Education, DePaul University (Cum Laude) Chicago,
Illinois

**Certifications**
District of Columbia Teaching Certification, Non-Categorical Special Education K
- 12

District of Columbia Administrative Certification

Recertification for Teaching K- 12, State of Maryland

**Publications**
1979 - District of Columbia Officer Friendly Curriculum Program Guide,
Elementary Division.

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————
                                          )
**DENITA HARRIS**                          )
                  **Plaintiff,**            )
                                          )
**v.**                                     )    **Civil Action No. 07-1422 (RCL)**
                                          )
**DISTRICT OF COLUMBIA**                   )
                  **Defendant.**            )
———————————————————————)

## ORDER

Upon consideration of the Plaintiff's motion for summary judgment and any

opposition thereto, it is hereby

**ORDERED** that the Motion is **GRANTED**;

**DECLARED** that the District of Columbia Public Schools ("DCPS") violated the

IDEA and denied D.H. a Free Appropriate Public Education by failing to respond to a

request for funding of an independent evaluation;

**ORDERED** that DCPS shall fund an independent functional behavioral

assessment ("FBA") of D.H.; and further

**ORDERED** that within 15 days following receipt of that evaluation, DCPS shall

convene a multidisciplinary team ("MDT") meeting, and at that meeting shall review all

of D.H.'s evaluations, develop an appropriate individualized education program ("IEP")

for her, and develop a compensatory education plan to compensate D.H. for DCPS'

failure to fund an independent FBA sooner.


                                          ———————————————————
                                          Royce C. Lamberth
                                          United States District Judge